JEANNETTE WEIS, Plaintiff, *v.* RICHARD W. WEIS, Defendant.

Supreme Court, Special Term, Monroe County, November 10, 1951.

*Hyman Freeman* for defendant.

*Bernard M. Pogal* for plaintiff.

VAN VOORHIS, J. The parties hereto intermarried on February 12, 1949. Both had been previously married. In each instance, their prior marriages had ended in divorce. On July 24, 1950, after a trial before the Official Referee plaintiff obtained an interlocutory judgment of annulment against defendant that has since become final, upon the ground that although a decree of divorce in New York State had dissolved his previous marriage, which was entered on February 13, 1946, no order had been .obtained permitting him to remarry three years later. The marriage between plaintiff and defendant took place in New York State, consequently it was void in view of the prohibition contained in section 8 of the Domestic Relations Law. Defendant herein had been the defendant in the previous divorce action (*D'Arcangelo* v. *D'Arcangelo,* 277 App. Div. 644).

Alimony could not be granted in an annulment decree prior to the amendment of the Civil Practice Act by chapter 226 of the Laws of 1940 adding section 1140-a. Since then, the Supreme Court, in its discretion, may grant or deny alimony in such suits and determine the amount and the length of time during which payments shall continue to be made (*Johnson* v. *Johnson,* 295 N. Y. 477). Jurisdiction is retained in the Supreme Court to modify or annul final judgments or orders awarding alimony in annulment suits (Civ. Prac. Act, §§ 1140-a, 1172-c). Annulment judgments differ from judgments of divorce or separation insofar as directions for the payment of alimony are concerned, inasmuch as in the case of the latter the right of the wife to receive alimony until her death or remarriage, if the husband can pay it, is ordinarily established by the final judgment. The discretion of the court in making subsequent modifications is usually exercised by varying the amount, rather than by discontinuing the alimony. The reason is that a judgment of divorce or separation is based upon the fault of the party against whom it is granted. The newly created power of the court to make awards of alimony in annulment suits (Civ. Prac. Act, § 1140-a, enacted by L. 1940, ch. 226) does not depend

for its exercise upon the fault of either party. It is true that the void or voidable character of a marriage may or may not be due to the fault of one or both of the parties, but the power of the court to provide support for the wife is conferred irrespective of fault (*Johnson* v. *Johnson, supra*), due, one may suppose, to the circumstance that the purpose of an annulment action is to terminate any status which the parties may have or appear to have as husband and wife, regardless of which one, if either, is to blame for having entered into an invalid marriage. The basis for this type of annulment decree is the marital status of one of the parties at the time of their marriage. Unlike a divorce or separation action, the outcome does not depend upon their behavior after marriage. It is not believed to have been the purpose of the Legislature in enacting section 1140-a to require, nor must the sound judicial discretion of the court always be exercised to allow payment for permanent alimony to a woman during the joint lives of the parties or until her remarriage, solely for the reason that the man concealed or misrepresented facts rendering the marriage void. In some instances such fraud may well have that result, but the law does not unwaveringly require such permanent payments due to the husband's fault in contracting the marriage, any more than it uniformly requires that the woman shall forfeit alimony if the infirmity in the marriage was due to her own act or fraud. In theory, a decree of annulment of this kind avoids a marriage as though it had not existed. This theory is sometimes contradicted in practice, but, neverthless, the award of alimony in a final judgment of annulment is not an adjudication (either as matter of law or in the exercise of discretion) that the woman has the right to receive alimony during the entire joint lives of the parties or until her remarriage. It is simply a determination that at the time of the decree the circumstances were such (though the pair were never legally husband and wife) that the man should support the woman until the further order of the court. This is rendered additionally clear by the sentence in section 1140-a of the Civil Practice Act, stating: " Upon the application of either the husband or the wife, upon notice to be given as the court shall direct, the court may annul or modify such direction, or in case no such direction shall have been made, in a judgment hereafter given, may amend it by inserting such direction." This shows that the Legislature intended alimony clauses to be added to or dropped from annulment decrees from time to time as circumstances might indicate.

Defendant was required to pay $30 per week by the annulment decree in this case, which was later reduced by Special Term to $20 per week. Upon the present motion defendant seeks to reduce the alimony still further or to eliminate it altogether. Plaintiff is now a government accountant in the employ of the Far East Command of the United States Army. She receives $3,100 per annum plus 10% differential, which amounts to $52.60 weekly after deductions for income tax and retirement allowances. Defendant's moving affidavit states that he receives the sum of $56.92 net per week. He has remarried. Plaintiff questions the accuracy of this statement of his earnings, asserting that he is in a family partnership with his father in the paint and shellac business.

It is not necessary to try the question of the exact amount of defendant's income, inasmuch as plaintiff does not apply for more than $20 per week upon this motion, and the court is satisfied that alimony payments should be discontinued. Ten months elapsed from the marriage date until the commencement by the wife of this annulment suit. The findings of the Official Referee base the annulment decree upon the omission of defendant to obtain an order permitting him to remarry under section 8 of the Domestic Relations Law, or their failure to be married outside of the State of New York. The situation was aggravated due to the misrepresentation by defendant to plaintiff that he was free to remarry her in New York State. It may well be that if she had known the true facts, which were known to defendant, she would have declined to cohabit with him. On the other hand, defendant appears not to have been motivated by a desire to consort with plaintiff reserving to himself an option to terminate the relationship by disclosing the legal defect in their marriage when it suited him to do so, inasmuch as he offered to marry her in Maryland, where their marriage would have been valid, but she declined to be married there. Plaintiff herself testified to his offer and her refusal to be married in Maryland.

However defendant's misrepresentation may have aggravated the situation, the reason on account of which alimony was awarded appears to have been that the wife was ill at the time of trial of the annulment suit and when judgment was rendered. She has now recovered from that illness and is fully self-supporting. The prohibition against remarriage in New York State contained in section 8 of the Domestic Relations Law does not impair the efficacy of the prior divorce decree to dissolve the former marriage, at least where remarriage occurs in

another State by whose laws it is not forbidden. The prohibition in the New York decree would have had no extraterritorial force if these parties had married in another State (*Moore* v. *Hegeman,* 92 N. Y. 521; *Fisher* v. *Fisher,* 250 N. Y. 313). That is what defendant attempted to do, but plaintiff prevented it.

Rules of general application are difficult to formulate in such cases. It appears, however, that in the case of persons who have each had previous matrimonial experience, who have cohabited as husband and wife for only a short time, where there are no children and each has become self-supporting, justice will not be served nor orderly relationship between the sexes promoted by granting an annuity to the wife during the joint lives of the parties. Some loss plaintiff has doubtless sustained; insofar. as such loss can be atoned for by money, it seems to me that she will have been recompensed by allowing to her the continuance of the payment of $20 per week alimony until the end of 1951. She will then have received support from defendant for more than twice the length of time during which they lived together. Payments of alimony shall then cease.