STANLEY CAVE et al., Respondents, v. IRVING A. GREEN et al., Appellants.

First Department, April 21, 1953.

*O. John Rogge* of counsel (*Murray A. Gordon* with him on the brief; *Irving Sverdlick,* attorney), for appellants.

*Cora T. Walker* for respondents.

VAN VOORHIS, J.  Plaintiffs are or have been tenants of apartments in the building owned by the corporate defendant, of which the individual defendant, Irving A. Green, is president. Plaintiffs did not enter under term leases, or such leases had expired when defendant Green persuaded them to sign two-year leases at rental increases of 15%.  This action is brought to vacate these two-year leases, upon the ground that they were obtained by fraud.  The nature of the alleged misrepresentations is somewhat obscure.  The amended complaint states that defendant Green " presented the said written lease forms as such to deceive the plaintiffs and lead them to believe, and they did believe, that they were leases on their respective apartments, for the rental that had been established by the Office of Housing Expediter  *  *  *  and/or the Temporary State Housing Rent Commission, which all of the tenants in premises, including plaintiffs, were compelled to sign, because he was going to do some repair work on the premises and wanted to make sure that the tenants would remain in the premises for at least a two year period."  The complaint also alleges that " the defendant, Irving A. Green, further deceived the plaintiffs, individually, in that they were led to believe, and they did believe, that he had a right to and would evict them from their apartments if they failed or refused to sign the lease immediately, at the time of presentation.  That the plaintiffs were deceived into the belief, and actually did believe, that they would not have to pay any

increase in rent, whereas in truth and fact the defendants were increasing the rent of each plaintiff fifteen (15%) per cent.''

These leases were signed by plaintiffs, providing for 15% rental increases. It is not charged that plaintiffs were tricked into signing some different kind of an instrument. Plaintiffs are not claimed to have been illiterate, and their testimony indicates that some of them, at least, possessed considerable shrewdness in bargaining. Plaintiffs are not in position to question the legal effect of what they signed (*Pimpinello* v. *Swift & Co.,* 253 N. Y. 159). Fraud in the treaty must be established if plaintiffs are to succeed (*Whipple* v. *Brown Bros. Co.,* 225 N. Y. 237).

The charges of misrepresentation of fact, which may be drawn from the complaint by reasonable and fair intendment, are that Green stated: (1) that the amount of the rental provided for in the leases had been established by the Federal Office of Housing Expediter or the Temporary State Housing Rent Commission, and (2) that plaintiffs could, and would, be evicted from their apartments unless they signed the two-year leases which Green presented to them that provided for rental increases of 15%. There is no allegation in the pleading that misrepresentations were made or relied on by any of the plaintiffs that all of the other tenants had signed for the proposed increase in rent.

Plaintiffs' testimony does not sustain the making of the misrepresentations of fact alleged in the amended complaint. The testimony of several plaintiffs that they were told that they were the last tenants to sign, is irrelevant to the issues raised by the pleadings. Fraud must be proved by clear and convincing evidence, and is not presumed. The testimony of the plaintiff Stanley Cave is to the effect that defendants contemplated making repairs and improvements to the building, and that, in order that this might be accomplished, each tenant had to sign the new leases for the reason that they had to be filed with the O. P. A. (Office of Price Administration). All of this testimony is vague and inconclusive. The further testimony of plaintiff Cave proceeded as follows:

'' I said, ' well, why the lease? ' ' Well,' he said, ' I am a lawyer and I know how to do things. I have been a real estate operator all my life.' He said, ' Leases don't mean anything.' And I said, ' Well, if I sign that lease, and suppose I want to move? ' And he said, ' Well, I will arrange it in the lease that you can move out any time you want to.'

"The Court: Was there anything else said?

"The Witness: Why, no, your Honor. That's all I remember, I can remember, about it."

Upon redirect examination, the same witness testified:

"By the Court:

"Q. You knew that you signed that lease and you knew that you would pay the landlord a 15 per cent increase in rent, or supposed to do the things the lease says, is that right? A. You mean did I understand that the O. P. A. gave him permission to raise the rent? No. These were papers that we had signed, that he was going to turn in to the O. P. A. asking for an increase because he was going to make these extensive repairs.

"Q. And you had agreed to pay the 15 per cent increase in rent? That is the question. A. I don't remember, your Honor.

"Q. Well, you knew that you signed for an increased rent, when you signed the lease, didn't you? A. Yes, that's right."

His wife's version was to the same effect.

Plaintiff Evelyne C. Walker testified:

"When I asked him the purpose of this lease, he said 'It is a lease for two years,' to protect us from the O. P. A. Now I don't know what the O. P. A. had to do with it. Well, anyway, I told him that I did not want to sign the lease, that I had intended to join my husband in Germany, who was in the Army, and I told him that I did not think I wanted to sign a lease.

"By the Court:

"Q. But you did sign the lease, though? A. Yes." She swore that she reads English, but did not read the lease and was ignorant that it provided for an increase in rent.

Plaintiff Jeff Small testified that defendant Green "told me he was the landlord, and that he's got a paper for me to sign for the O. P. A., to get the O. P. A. not to put me out for the next two years. And I asked him 'Why I have to sign the paper?' He says, 'You must sign. Everybody else has signed. You are the only one who has to sign now.' "

Plaintiff Louise Henry testified that Green stated "that it was a matter that was compulsory at the O. P. A."

Plaintiff Olive Joseph testified that Green stated the reason for her signing to be, "because this is a protection from the O. P. A. for raising your rent." She admitted that she knew that the lease provided for a rental increase.

Plaintiff Arnold Greenidge testified that when he signed, "I asked him if it was from the O. P. A. and he said, 'These are from the O. P. A. and that I have to sign it.' He said, 'I have to send them in to the O. P. A. and have them approve them.' "

Green's version is that " I told them that the O. P. A. had passed a regulation that if I were to receive a 15 per cent increase I had to give them a two year lease to insure them, no matter what would happen with the Local Rent Administration, that they would pay the same rent in the next two years ". He denied that he told these tenants that they were compelled to sign any of these leases, or that they would have to vacate if they did not sign them.

Analysis of the testimony limits the area of dispute in what occurred. Only two or three of plaintiffs testified that Green told them that they were required to sign by the O. P. A. Several said that what he told them about the O. P. A. requiring it, was that their signing would be a protection for two years against action which might be taken by the O. P. A. in raising the rent or permitting them to be evicted, and that the two-year term was required by the O. P. A. if they were to have that protection. That this was the substance of what Green stated to the tenants, appears not only from his testimony but shines through the testimony of plaintiffs as well. Plaintiffs have sought to create a technical issue over whether the 15% increase in the leases signed by these tenants was " voluntary " by them, or whether it was " forced ". The idea that it was forced is based upon a misconstruction of what Green told them, by trying to make it appear that through informing them of the O. P. A. rules and directions, he was telling them that the increases themselves were required by that agency. The great weight of the testimony is to the contrary.

A reading of the record as a whole reveals that plaintiffs consciously entered into leases containing rent increases for the purpose of getting improvements. While their testimony indicates disappointment in this respect, there is no allegation in the complaint that any promises to make improvements were fraudulent. If there has been diminution of essential services to the tenants in this apartment house, other remedies are available to them than suing to vacate the leases upon the ground of fraud.

The findings of fact that the leases with plaintiffs were signed as a result of fraud or misrepresentation, in accordance with the allegations of the complaint, should be reversed, and the judgment declaring these leases to be void should be reversed with a single bill of costs to appellants, and new findings should be made in accordance with this opinion. Settle order.

PECK, P. J., DORE, CALLAHAN and BREITEL, JJ., concur.

The findings of fact that the leases with plaintiffs were signed as a result of fraud or misrepresentation, in accordance with the allegations of the complaint, unanimously reversed, and the judgment declaring these leases to be void is unanimously reversed with one bill of costs to the appellants, and new findings are to be made in accordance with the opinion herein. Settle order on notice. By reason of the reversal of the judgment, appeal from denial of motion for new trial has become academic and is, accordingly, dismissed.