Isidob, Wassebvogel,
Spec. Ref. Plaintiff seeks a separation from defendant on the grounds of abandonment, cruelty and failure to support. Defendant’s answer merely denies the allegations of the complaint respecting his financial condition and plaintiff’s assertions therein that she had managed her household affairs with “prudence and economy.”
The record establishes that on or about March 16, 1958, defendant unjustifiably abandoned plaintiff and their two infant sons. Plaintiff, therefore, is entitled to a decree of separation and to the custody of the children. The sole remaining issue before the court, therefore, is as to the amount of alimony to be awarded plaintiff for the support of herself and the two children of the parties.
There has been no definite formula designed whereby the amount of support to be awarded in all cases can be determined with mathematical certainty. Likewise, there is no legal or legislative sanction for the theory frequently adopted that a wife is entitled to one third of her husband’s income. (Jacobs v. Jacobs, 82 N. Y. S. 2d 410.) Alimony should not be a reward for virtue nor punishment for guilt. Theoretically, it should be fixed at an amount sufficient to maintain the wife in a manner fitting to her station in life (Hearst v. Hearst, 3 A D 2d 706, affd. 3 N Y 2d 967).
It is well settled that one of the principal elements in determining this amount is the standard of living maintained by the parties prior to their separation. (Patton v. Patton, 5 A D 2d 860; Hearst v. Hearst, supra.) Contrary to plaintiff’s con *925 tention, however, this is not the sole criterion to be considered by the court. A realistic attempt must be made to balance the wife’s needs and her independent means, if any, for meeting them, with the husband’s ability to pay (Phillips v. Phillips, 1 A D 2d 393, 396, affd. 2 N Y 2d 742).
In the instant action, defendant’s testimony with respect to his financial position, annual income, capital and other assets, is replete with vagueness, uncertainty and denials of information or knowledge. Although defendant steadfastly claimed that he has no income other than his weekly salary of $250, an examination of the record establishes the following facts:
(1) Defendant paid $18,000 for the co-operative apartment in which he, plaintiff and their children resided. The monthly maintenance charge for this apartment is more than $250.
(2) Defendant operates a luxury foreign car (which he claims is owned by a corporation of which he is vice-president).
(3) Defendant’s 1956 sworn Federal income tax return shows an adjusted gross income of more than $74,000. His 1957 Federal income tax return indicates a declared income of approximately $60,000.
(4) Defendant maintains a stock brokerage account in which there was a balance due him, as of November 18, 1958, of $3,569.25. Dividends amounting to more than $12,000 were paid by his brokers on defendant’s account in 1957 and 1958.
(5) The total value of defendant’s stock holdings is more than $226,000, his equity therein being more than $193,000.
In addition to the foregoing, although defendant unequivocally stated that he never told anybody that he earned more than $250 per week, as he here alleges, documentary evidence establishes that in August, 1956, he submitted a signed statement to a bank wherein he stated that he earned $25,000 per year. Similarly, although defendant admitted membership in the New York Athletic Club, substantial monthly entertainment bills and frequenting lavish and expensive nightclubs and restaurants of this city, he claimed it was all required for business purposes exclusively.
The court finds defendant’s explanations for his ability to spend sums of money far beyond his purported earnings of $250 per week unbelievable. Likewise, for a man who allegedly must entertain so frequently “ solely for business purposes,” defendant’s assertions of his lack of any knowledge of his corporate affairs are specious. It is apparent from the record that the internal financial machinations of the corporations with which defendant is associated were employed as a means of *926 permitting him to have a lot more cash and other assets at his disposal than otherwise appears from his own personal records. The court, however, will look behind such stratagem in its attempt to arrive at defendant’s true financial position, which, it should be noted, will not be gauged or founded on his net income from these corporations alone.
It is significant that although defendant claimed that his father was the true owner of the stock account and various other assets held or used by Mm, Ms father was not called as a witness to corroborate such testimony. Similarly, the court finds it incredible that despite signing his 1956 and 1957 tax returns and paying a substantial tax in each of these years, defendant knows absolutely nothing about the returns or their contents, as he now insists. This contention is not consistent with defendant’s alleged business acumen.
The court is aware that income tax returns are not necessarily conclusive evidence of income so far as alimony is concerned. The statements set forth therein, however, coupled with all the other evidence adduced upon the trial, clearly establish that plaintiff and defendant maintained a relatively high standard of living during their marriage, which standard was well within defendant’s means and income. The credible testimony shows that prior to defendant’s abandonment of plaintiff in 1958, the parties spent more than $50,000 for living purposes during the period of January to November, 1957. In the opiMon of the court, this refutes defendant’s contention that his only income was $250 a week. The parties would have been unable to maintain anything like the standard of living they were accustomed to throughout their marriage on the earnings alleged by defendant.
The proof establishes that plaintiff has no independent assets or income of her own. During the last year that plaintiff lived with defendant, she worked as a model for about three months until her pregnancy, earning approximately $1,000. She earned less than $2,000 as a model in 1956. The credible testimony convinces the court that since the birth of her second child, plaintiff is unable to obtain employment in her chosen field. Moreover, it is to be noted that the two children of the parties are of very tender years, to wit, 23 months and 9 months of age. In the opinion of the court, it is more important that plaintiff remain at home and give these infant children the motherly love and care which they require and are entitled to, rather than leave them in the care of a stranger in order to seek employment.
*927 In view of the foregoing and upon all of the evidence before me, including the proof regarding defendant’s alleged necessary expenses, I hold that alimony for the support of plaintiff and the two infants be fixed in the sum of $200 per week. In addition thereto, defendant is to continue to pay the monthly charges for the co-operative apartment so long as he permits plaintiff and his children to reside therein. The court, however, does not find that defendant must keep this apartment. If he desires to sell it, defendant may do so, having in mind, however, that plaintiff and the children will then be required to find other suitable living accommodations. In this event, if defendant, in effect, compels plaintiff and their children to remove from the co-operative apartment, the alimony award is then to be increased to the sum of $250 per week in order to make allowance for the payment of rent by plaintiff.
Plaintiff’s attorney has made application for an additional counsel fee. By order of Special Term, he has already received the sum of $1,500. The basis of his application here is that he appeared in court on five occasions. It should be noted, however, that on three of these occasions nothing more was done than to answer the calendar call and adjourn the action. The fourth occasion involved a very brief conference with a Justice of this court, and the fifth occasion, the actual trial of this action, took only one day. As above noted, the trial of this action, insofar as plaintiff’s right to a separation is concerned, was, in effect, uncontested. In the opinion of the court, therefore, the compensation previously received by counsel is adequate. The application for an additional counsel fee is denied.
Judgment is rendered in favor of plaintiff in accordance with the foregoing.
No costs are awarded.
Submit decree within 10 days on 3 days’ notice. Such decree shall provide for visitation rights by defendant at times mutually agreeable to the parties. Otherwise, the court will fix the time of such visitation. The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.