Jacob Markowitz, J.
The parties in this separation action were married on July 29, 1934. There are two children of the marriage, a son who is now 26 years of age and a daughter of 13. Sometime prior to October 9, 1961, defendant obtained a Mexican decree of divorce from plaintiff, and on that date went through a marriage ceremony with a person he currently holds out to be his wife. Plaintiff thereupon obtained an ajudication from this court declaring that she was still the wife of the defendant and that the purported divorce was of no force and effect. In light of these events, plaintiff’s right to a decree in this action was not challenged by defendant at the trial. The entire testimony and evidence introduced related almost exclusively to the question of fixation of alimony. Even in this regard there was little disagreement as to the material facts.
Except for the first few months of the marriage when the parties resided in the District of Columbia, they lived either in east side luxury apartments or in a cottage on an estate in Sands Point, Long Island, belonging to plaintiff’s parents. They intermittently employed household help — sometimes having a full-time staff of three, other times utilizing only part-time help. Their children were sent to the finest private schools and they almost always maintained two automobiles.
*902 This standard of living is far from commensurate with defendant’s earning record, and can only be explained by the fact that help was received from other sources, particularly plaintiff's family. If any occupational description can be tagged onto the defendant it is that of ‘1 insurance agent ’ ’. He was set up as such by his then father-in-law early in his marriage with the idea that he could establish himself with the impetus of business sent to him by his father-in-law and his associates. He obviously did not apply himself in this vocational pursuit, and again with Ms father-in-law’s intercession, he tried the advertising field as an account executive, with almost guaranteed accounts but apparently would not convert these advantages into a profitable career. There is testimony that for a time he tried going into the business of operating a bowling alley, speculating in oil leases, and promoting a certain type of toy, all to no avail, as none of such ventures showed any profitable results. He claimed that he spent the major portion of each day for several years in search of new insurance clients and was chauffeured in such a venture by the woman whom he claims to be his current wife. He claims that Ms current income and income for many years past is only nominal and has been solely from insurance renewals, which did not require any current services or work on his part. He maintains a token office for his insurance business which he visits “ once or twice a year ”. Currently he claims his occupation is that of a “ farm supervisor ” managing the Turkey Hollow Farm in Amenia, New York, which belongs to his ‘ ‘ current ’ ’ wife and wMch is where they both live. He says he hopes to put it eventually on a sustaining basis, but thus far derives no income from it. The court finds it incredulous that the amount of effort the defendant asserts he made in attempting to earn a living should produce absolutely no results.
His personal finances, however, did not deter him from living even up to the present in what must be characterized as playboy fashion. Expensive restaurants, night clubs and theatres, Jaguar automobiles, hunting, fishing and tropical vacation trips, golfing, high-stake poker games and even dating, while living with plaintiff, are but a few symbols of the life he has accustomed himself to. Even Ms current existence, wMch he tries to pass off as that of an impoverished farm worker, can more accurately be described as that of a country gentlemen. He goes ‘ ‘ cubbing ’ ’ with the Milbrook Hunt Club wMch he describes as riding with hounds “ in the nature of a fox hunt ” and engages in the sport of “ beagling ” which Webster describes as hunting with beagle hounds, but wMch he says ‘ ‘ is in the way of being a walk through *903 the country following beagles, who are supposed to chase rabbits ”. These activities are here described not for the purpose of ridicule or condemnation but rather to show that defendant’s activities are not those of the average man but of the wealthy, that his contacts are not with ordinary people but with the influential, that the circles he has always travelled in were such that had he seriously applied himself to any of the callings he undertook he would have met with considerate financial success. The court observed him during the trial to be a poised, suave, cultured, self-assured and fashionably well-dressed individual with an air of the educated and worldly wise, having varied interests extending even to creative writing and producing for television.
Accordingly, the court finds that plaintiff is entitled to judgment on her causes of action grounded on abandonment, nonsupport and adultery. A further cause of action based on cruelty was withdrawn at the trial. There remains only the question of alimony.
Alimony is an award by the court upon considerations of equity and public policy which is founded upon the obligation which grows out of the marriage relation that the husband must support his wife and family. This support must be measured by the husband’s ability to earn a living (De Brauwere v. De Brauwere, 203 N. Y. 460), and by the manner in which the parties are accustomed to live. (Tirrell v. Tirrell, 232 N. Y. 224.) This measure of ability to support, however, is not based on what an irresponsible husband deigns to earn, but what he is potentially able to earn in light of his established physical and mental capabilities. (See Vought v. Vought, 22 Misc 2d 356.)
Defendant in the instant case has maintained a standard of gracious living, leaving to others the execution of responsibilities he undertook. While he idles, plaintiff is forced to live in her mother’s apartment sharing a room with her daughter. The fact that plaintiff’s mother is well to do is no factor here. It has been established that plaintiff’s personal resources consist of an allowance for clothing, gratuitously given to her by her family since she was 16 years of age.
The figure of the penniless playboy might make an amusing and colorful caricature in the fanciful folklore of Hollywood movies, and might be acceptable within the established mores of the so-called “international set”. He is not so amusing and acceptable in real life, where he has assumed the obligations of husband and father but refuses to live up to them. It is not the function of a court, not even a court of equity, to dictate to a party before it the standards of morality he should pursue. *904 However, where a moral attitude amounts to a deliberate disregard of legal obligations, the court, under such circumstances, can and must see to it that the legal obligations are enforced.
In assessing defendant’s earning potential, it is the opinion of the court that with proper application he is capable of earning sufficient moneys to enable him to maintain himself and also to adequately provide for his wife and infant child as hereinafter provided. The court has also considered the fact that the person he regards as his current wife thus far has never been supported by him and undoubtedly does not need his support and that his own personal needs are apparently absorbed in the overhead of Turkey Hollow Farm. The sum of $200 a week is awarded for the maintenance of his wife and support of their daughter. Counsel fees, in addition to the amount heretofore awarded, are awarded in the sum of $1,300, payable within 20 days of entry of judgment. Custody of the infant child is awarded to the plaintiff, with visitation rights to the defendant as agreed upon by the parties.