■ PAULINE ORENSTEIN, Respondent-Appellant, v. IRVING ORENSTEIN, Appellant-Respondent.— Judgment awarding plaintiff permanent alimony in the sum of $350 per week and counsel fees in the sum of $5,000, modified, on the law and on the facts, to the extent of reducing the alimony to $200 per week and counsel fees to $2,000, and, as so modified, affirmed, without costs or disbursements. Defendant challenges as excessive the award of alimony and counsel fees in this action for separation. The decision fails to state the essential facts. The single finding relative to the financial circumstances of the parties is conclusory. (See CPLR 4213; *Power* v. *Falk*, 15 A D 2d 216.) The record likewise fails to sustain the award of support and counsel fees. The

parties were married December 12, 1961. Each had been married previously, the wife twice and the husband once. The separation occurred June, 1965. There is no issue. Defendant, prior to his marriage with the plaintiff, maintained a bachelor apartment for about 20 years. Plaintiff moved into defendant's furnished and rent controlled apartment. The apartment rent, originally $308 monthly, was increased in stages to $358. Following decontrol, the apartment rent was increased to $750. Thereupon defendant arranged for an apartment on a lower floor at $418 monthly. Defendant admits annual living expenses of about $20,000 which he particularizes as follows: Plaintiff received weekly for out-of-pocket expenses $30; hotel charges of $400 monthly for food, drugs, laundry and other items; $50 weekly restaurant expenses; annually, $1,000 for clothing, $435 life insurance premiums, $400 medical expenses and $800 automobile expenses. During the marriage the parties had a single extended vacation of 10 days in Miami, Florida, at the house of a friend of defendant. Defendant discontinued his brokerage business during 1962. His testimony is that his annual income in and after 1963 did not exceed $15,000. The standard of living during the latter years of the marriage would appear to have been dependent in part on defendant's capital. In the absence of special circumstances, not relied on here, a former matrimonial standard of living based on capital expenditures is not a proper basis for permanent alimony. (*Winkler* v. *Winkler*, 25 Misc 2d 938, 940, affd. 13 A D 2d 924, affd. 11 N Y 2d 693; *Hearst* v. *Hearst*, 3 A D 2d 706.) We reduced as excessive an award of temporary alimony in this case (24 A D 2d 753) from $175 per week, plus $350 rent per month, to the sum of $150 per week. We stated then that the amount awarded for temporary alimony was excessive and not supported by the record. Similarly, the instant award does not find support in the record. Plaintiff's uncorroborated generalities, entirely conclusory in nature, fail to meet the defendant's specific evidence despite ample opportunity afforded the plaintiff to rebut defendant's allegations and proof on the trial and on the application for temporary alimony. In addition, the award of alimony should be made in the light of defendant's need to maintain separate living quarters. (*Pournaras* v. *Pournaras*, 25 A D 2d 635.) The grounds for separation were not contested, the issues as to support were not complicated and the trial was brief. In the circumstances, the award of alimony and counsel fees beyond the sums herein provided was excessive. Concur — McNally, Steuer and Capozzoli, JJ.; Breitel, J. P., and Stevens, J., dissent in the following memorandum by Breitel, J. P.: I dissent and vote to affirm. Defendant husband did not contest plaintiff wife's right to a separation based on a series of brutal physical beatings, some in public places. Only the amount of support of this childless marriage of over three years is in issue. The wife testified that following the honeymoon in Mexico, the parties occupied an apartment at Central Park South in Manhattan at a rental of $360 per month, and that the husband had furnished it with $40,000 worth of antiques, always paying cash for his purchases. While she was allowed to have many charge accounts at leading shops, her husband always urged her to use cash. He gave her $100 to $200 per week in cash for spending; later in her testimony she limited the pocket allowance to $100 per week. She was provided with fur coats and various items of expensive jewelry during the marriage. All other household expenses were paid by the husband on a monthly basis. He, a heavy drinker, told her that the liquor bill was $600 per month. They operated a current model automobile and planned, for a time, to purchase a co-operative apartment for $30,000. She fixed the weekly expenditures, about which she was frankly uncertain, at $800 to $1,000. The wife testified that she signed an income tax return for $20,000 about which the husband explained that he tried to do the best

he knew. He had stock trading accounts and life insurance in the aggregate amount of $250,000. He had bank accounts and safe-deposit vaults under different names. The wife may have exaggerated but the husband was alternately evasive or utterly false in his testimony. He brazenly denied knowing, even in rough estimate, what was his income for the previous year. He stated that his income for the remoter past was $15,000. He admitted to a standard of living of $20,000. He gave his wife $30 per week for spending; the household monthly expenses were $400; and his wife's annual clothing allowance was $500. On the other hand, he admitted spending $35,000 in refurnishing his office (later disbanded); furnishing his apartment with antiques, but "at a cost a lot less than $40,000", and even "a lot less than $25,000"; and that some of his own suits purchased during the marriage cost $200 each. Although he claimed to be a broker or underwriter in over-the-counter stocks, he admitted to a number of other business interests which were either ill-defined or related to peripheral service industries. Thus he admitted to an interest at one time in a financing concern and to a trip to Lisbon in connection with the acquisition of an interest in a gambling casino. In still another connection he introduced a notorious acquaintance of 30 years' standing to still another acquaintance because the first was interested in entering the other's perfume business. To top it off, with respect to another named firm he could not recall for what "professional services" rendered to it he had received substantial sums. When pressed he admitted to being worth about a quarter of a million dollars, that his stock brokerage firm was inactive, and that his purchase of suits just about exhausted his clothing allowance. Such testimony by the husband should not be rewarded by a reduction in his support for the wife. Nor should counsel fees be curtailed when the lawyers' work was evidently productive of the information so difficult to elicit from this incredible and evasive defendant. Nor should the court contradict its often-expressed policy by referring to the reduction by this court on the temporary support fixation; this court has repeatedly enjoined on litigants and nisi prius courts that the proof and determinations on the one are unreliable and should not inhibit the open inquiry and the freedom of determination to be made upon the trial (e.g., *Barnes* v. *Barnes*, 3 A D 2d 242; *Becker* v. *Becker*, 17 A D 2d 806; *Dominick* v. *Dominick*, 23 A D 2d 645; *Haber* v. *Haber*, 20 A D 2d 858. The Second Department holds to the same effect, e.g., *Shaifer* v. *Shaifer*, 23 A D 2d 589; *Dubin* v. *Dubin*. 14 A D 2d 923).* In the absence of credible contradiction, the wife's proof, even after discounting for evident exaggeration, supports the trial determination.

---

* The worst of the matter is that reference to the application for temporary support yields the following sworn statement by the husband: "Not only have I at all times maintained and paid for a luxurious apartment, but I also constantly supplied my wife with substantial amounts of spending money, jewels, a magnificent wardrobe, entertainment and travel."