Chief Judge Fuld.
The husband and wife in each of these three childless marriage cases had lived apart for more than two years following a decree of separation which contained a provision for alimony. In subsequent actions for divorce, brought pursuant to section 170 (subd. [5]) of the Domestic Relations Law, each husband opposed the continuation of any alimony, in large part on the ground that his wife was self-supporting. The present appeals deal principally with (1) the effect of a provision for alimony in the prior separation decree and (2) with factors to be considered by the court in fixing alimony in the suit for divorce.
The cases before us — in which a wife, who was awarded alimony in the separation decree, seeks alimony in the later divorce action — differ from those in which the wife or husband seeks modification of an alimony provision contained in an earlier matrimonial decree. In the latter instance, despite the broad language of section 236 of the Domestic Relations Law,[1] the courts have ruled that a party seeking a reduction or increase must show a “ substantial change of circumstances (Brody v. Brody, 22 A D 2d 646, affd. 19 N Y 2d 790; Presberg v. Presberg, 285 App. Div. 1134; Hedaya v. Hedaya, 68 Misc. 2d 165.) This accords with the fundamental principle that litigation must have an end and that a court, having performed its function, may not lightly be asked to do it all over again.
In a case, however, where divorce follows separation — whether under the recently enacted provision of the Domestic Relations Law (§ 170, subd. [5] [L. 1966, ch. 254]) or under prior law on the ground of adultery—the parties are before the court in a new and different proceeding, in which different relief is sought. Under such circumstances, the court is privileged to consider the question of alimony de novo. (See, e.g., Plancher v. Plancher, 29 N Y 2d 880, affg. 35 A D 2d 417, 422; Bishop v. Bishop, 15 A D 2d 494, 495; Goshin v. Goshin, 281 App. Div. 979; Hedaya v. Hedaya, 68 Misc 2d 165, supra.) Thus, it has been expressly held that “ the alimony provision in the *414 separation decree is not conclusive with respect to the fixation of alimony in the divorce action and does not require plaintiff to bear the burden of showing change of circumstances ’ ’. (Goshin v. Goshin, 281 App. Div. 979, supra.) And, in the Bishop case (15 A D 2d 494, 495, supra), the court declared, " [t]he stipulation and the separation decree do not deprive the Trial Judge in the divorce action of the power to award amounts for support which are different from the amounts specified in the separation decree ”.
Concluding, therefore, that the courts are not bound by the prior alimony awards, we must now determine the relevant elements or factors to be considered in fixing alimony in suits instituted under subdivision (5) of section 170.
Formerly, various provisions of the Civil Practice Act (e.g., §§ 1155, 1169, 1170) directed a husband to provide for the wife " as justice requires ” and “ having regard to the circumstances of the respective parties ’ ’. This was originally interpreted as mandating the measure of alimony to be simply "commensurate with the manner in which the parties have lived and a consideration of the ability of the husband to furnish means of support.” (Tirrell v. Tirrell, 232 N. Y. 224, 230; see, also, Burr v. Burr, 7 Hill 207, 211; cf. Hearst v. Hearst, 3 N Y 2d 967, affg. 3 A D 2d 706.) But, as the Appellate Division noted in 1956 in Phillips v. Phillips (1 A D 2d 393, 395, affd. 2 N Y 2d 742), the times have changed, owing not alone to the coequal status which a married woman today shares with her husband but also to the increase in the number of married women working in gainful occupations. (See, also, Doyle v. Doyle, 5 Misc 2d 4, 6.)
In fixing the amount of alimony to be awarded, the courts look, in the first instance, to the provisions of section 236 of the Domestic Relations Law (L. 1962, ch. 313, as amd., L. 1968, ch. 699). This provision—which, as one commentator observed, " replaces many of the scattered provisions of prior law in the area of alimony and support for the wife” (Siegel, Prac. Comm., McKinney’s Cons. Laws of N. Y, Book 14, Domestic Relations Law, § 236, p. 135) —vests the courts with an exceed-
*415 ingly wide latitude in determining the right to alimony and its amount.[2] The statute recites, in part, that
“ In any action or proceeding brought * * * for a separation, or * * * for a divorce, the court may direct the husband to provide suitably for the support of the wife as, in the court’s discretion, justice requires, having regard to the length of time of the marriage, the ability of the wife to be self supporting, the circumstances of the case and of the respective parties.” (Emphasis supplied.)
In addition to “ the length of time of the marriage [and] the ability of the wife to be self supporting”—factors expressly added to section 236 in 1968 (L. 1968, ch. 699)—the courts have indicated a number of other circumstances to be taken into account in fixing alimony. These include the husband’s financial resources and the established standard of living of the parties (see Hearst v. Hearst, 3 N Y 2d 967, affg. 3 A D 2d 706, supra; see, also, Winkler v. Winkler, 11 F Y 2d 693); the -age and health of the parties and, to a limited extent, their conduct. (See Phillips v. Phillips, 1 A D 2d 393, 398, affd. 2F Y2d 742, supra; Gurian v. Gurian, 29 N Y 2d 920, affg. 36 A D 2d 853.) As stated in the Phillips case, “The ultimate determination in each case must depend upon a balancing of several factors — the financial status of the respective parties, their age, health, necessities and obligations, their station in *416 life, the duration and nature of the marriage, and the conduct of the parties ” (1 A D 2d 393, 398, affd. 2 N Y 2d 742, supra)[3]
When it amended section 236 to specify that the court should consider the wife’s “ ability * * * to be self supporting,” the Legislature gave explicit statutory recognition to a circumstance which the courts, even absent legislative specification, had increasingly considered in' making alimony awards in recent years. (See, e.g., Phillips v. Phillips, 2 N Y 2d 742, affg. 1 A D 2d 393, supra; Hearst v. Hearst, 3 N Y 2d 967, afiig. 3 A D 2d 706, supra.) In the Phillips case, for instance, the Appellate Division declared that regard was to be had ‘ ‘ not only [for] the standard of living the parties enjoyed jointly during marriage, but [for] the financial resources of each, considered separately (Lake v. Lake, 194 1ST. Y. 179, 183). There must be a nice but realistic balancing of the wife’s needs and her independent means for meeting them with the husband’s abilities to pay” (1 A D 2d 393, 396, affd. 2 N" Y 2d 742, supra). Then, pointing out that the courts of other States, where the divorce results from the husband’s wrongdoing, “ usually take the realistic view that the amount of [alimony] should be fixed with an eye to the ex-wife’s resources or abilities for self-support ” (p. 397), the Appellate Division concluded that “ the *417 financial circumstances of the wife, while not controlling, are relevant as one of the factors that must guide the court’s discretion in determining the amount of maintenance which justice requires ” (pp. 397-398).
*416 “ The maintenance order shall be in such amounts and for such periods of time as the court may deem just, without regard to marital misconduct, and after consideration of the following factors:
“ (a) the financial resources of the party seeking maintenance and his or her ability to meet his or her financial needs independently, including the extent to which a provision for support of any child living with the party includes a sum for that party;
“ (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find suitable employment;
“ (c) the standard of living established during the marriage;
“(d) the duration of the marriage and the physical or emotional conditions of the spouse seeking maintenance; and
“ (e) the ability of the spouse from whom maintenance is sought to meet his or her own financial needs while meeting those of the spouse seeking maintenance.”
*417 With these principles in mind, we turn to the cases on appeal. It should he noted that, in reaching a decision, this court will not review the propriety of the Appellate Division’s award, even when it differs from the trial court’s, unless the reduction or increase is so gross and excessive as to show an abuse of judicial discretion or unless an underlying question of law arises. (See Orenstein v. Orenstein, 21 N Y 2d 892; Trippe v. Trippe, 19 N Y 2d 944; Sacknoff v. Sacknoff, 7 N Y 2d 771; see, also, text of footnote 2, supra, p. 415.)
Kover v. Kover
Married in 1959, plaintiff wife obtained a separation decree from defendant husband in 1967 on the ground of abandonment. At that time she was earning $9,450 a year, and the defendant was preparing to give up an annual salary of $20,000 and accept a $15,000 a year fellowship to study for two years. The court fixed alimony at $225 a month. When this divorce action was brought three years later, the husband was earning $14,000 a year, the wife, the sum of $10,785; however, in consequence of the husband’s debts, the net income of each was about equal. The court at Trial Term denied alimony to the wife, and the Appellate Division affirmed that determination.
Both before and since the enactment of section 236 in 1962 (L. 1962, ch. 313), the courts have held that they possess the power to refuse a wife’s application for alimony. (See, e.g., Phillips v. Phillips, 1 A D 2d 393, 396, affd. 2 N Y 2d 742, supra; Brownstein v. Brownstein, 25 A D 2d 205, 209; Rosa v. Rosa, 275 App. Div. 1050; Weis v. Weis, 202 Misc. 101 [per Van Voorhis, J.].) In the Phillips case, the court, after noting that times have changed and that women have ‘ ‘ ‘ practically unlimited opportunities * * * in the business world of today’ ”, (p. 395), went on to state that, “ ‘in an era where the opportunities for self-support by the wife are so abundant, the fact that the marriage has been brought to an end because of the fault of the husband does not necessarily entitle the wife to be forever supported by a former husband who has little, if any, more economic advantages than she has. ’ (Kahn v. Kahn, *418 78 So. 2d 367, 368 [Fla.].) * * * The abiding interest of the State is in the preservation of the family, and in maintaining it as a self-sufficient, independent unit. Even when the familial entity has been destroyed, however, the State has a continuing interest in allocating the economic burdens fairly, so that members of the former family group, including the husband, are not individually destroyed by crushing economic and psychological pressures. Alimony must therefore be measured largely by the need for support rather than the desire for vengeance ” (1 A D 2d, at pp. 396-397).
Since, then, a court in a divorce proceeding is not bound by a provision for support in an earlier separation decree and possesses discretionary power to deny alimony to the wife, we conclude that the courts below did not, in light of the record presented, abuse their discretion in refusing to grant alimony. The couple was childless, the wife was still in her thirties and capable of supporting herself, the marriage was of moderately short duration and the income of the spouses almost equal.
This does not, however, mean that the plaintiff is forever barred from obtaining support. As indicated, one of the factors to be considered in determining alimony is ‘ ‘ the standard of living the parties enjoyed jointly during marriage ”. Here, the husband had been making $20,000 a year while living with his wife but the courts below found this to be outweighed by his reduced circumstances. Nevertheless, upon a “ substantial change ” in his financial position for the better, or the wife’s for the worse, the courts—upon a future application for modification of the decree—would be warranted in giving added significance to the husband’s income during marriage, since the “ preseparation mode and style of living ’ ’ of the parties would then become a more significant factor in determining the question of alimony. (Brody v. Brody, 22 A D 2d 646, affd. 19 N Y 2d 790, supra; see, also, Winkler v. Winkler, 13 A D 2d 924, affd. 11N Y 2d 693, supra.)
Mibaldi v. Mibaldi
Having lived with defendant husband for only two years — from 1958 to 1960 — the wife, in 1962, obtained a separation decree on the ground of abandonment. The husband, a physician making $16,000 a year, was required to pay alimony of $60 a week. "When this divorce action was brought in 1969, the *419 husband was earning about $33,000 annually, the wife approximately $2,646. She is a licensed real estate saleswoman, owns an automobile and is owner in common with her parents of a two-family house. She estimates that her expenses are about $100 a week. The husband not only objected to an award of alimony but counterclaimed to have the marital home—where he has his medical practice and which is now owned by the parties as tenants by the entirety—returned to him “ as sole owner ”.
The Supreme Court denied the wife alimony and enjoined her from interfering with the husband’s “ use ” of their residence. The Appellate Division modified the resulting judgment by directing the latter to pay $60 a week, by dismissing his counterclaim and by providing that title to the house “ be deemed held by [the parties] as tenants in common”. On the husband’s appeal to our court, we perceive no basis for stamping as an abuse of discretion the Appellate Division’s grant of alimony of $60 a week or for upsetting its dismissal of the defendant’s counterclaim, based upon his assertion that his wife had fraudulently induced him to place the marital home in both their names as tenants by the entirety. His act of taking title in that fashion gives rise to a presumption that he intended to make a gift to his wife (see, e.g., Mittmcm v. Mittman, 24 1ST Y 2d 826, affg. 30 A D 2d 867; Secrist v. Secrist, 308 N. Y. 750, affg. 284 App. Div. 331), and we need but say that the record supports the Appellate Division’s conclusion that that presumption was not rebutted. It follows, therefore, that, upon the termination of the marriage, the parties became tenants in common of the premises in question.
Dulbeb v. Dulbeb
Plaintiff husband and defendant wife, each previously wed, were married in 1958. The wife obtained a decree of separation in 1967, based on the husband’s abandonment, and the husband was required to pay $42.50 a week for her support out of a salary of about $10,000 a year. When he commenced this action for divorce in 1969, he was earning some $14,000 annually. In the prior year, the wife, who had worked intermittently during the marriage, had earned about $8,800. The court at Special Term refused her alimony but the Appellate Division, finding such denial an “improvident exercise of discretion”, *420 modified the judgment and awarded alimony of $42.50 a week. The husband appeals and seeks reinstatement of Special Term’s judgment. In view of the difference in the earnings of each of the parties, it may not be said that the Appellate Division abused its discretion when it granted this relatively modest sum to the wife.
In each case, the order appealed from should be affirmed. Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
In each case: Order affirmed, without costs.

. Section 236, insofar as it relates to a modification, provides that, upon application of either husband or wife, “ the court may annul or modify ” a direction for alimony “ whether made by order or final judgment.”

. The Appellate Division, of course, has the same discretion as the trial court in deciding such matters as the amount of alimony to be granted. (See, e.g., Orenstein v. Orenstein, 21 N Y 2d 892; Trippe v. Trippe, 19 N Y 2d 944; Phoenix Mut. Life Ins. Co. v. Conway, 11 N Y 2d 367, 370-371; Saeknoff v. Saeknoff, 7 N Y 2d 771; O’Connor v. Papertsian, 309 N. Y. 465, 471; see, also, 7 Weinstein-Korn-Miller, N. Y. Civ. Prae., par. 5501.22.) As we wrote in the Phoenix Mut. Life Ins. Co. case (11 N Y 2d, at pp. 370-371), “it matters not that the granting of an order ‘ would lie within the discretion of the trial court, for “ [m]atters of discretion are reviewable by the Appellate Division. Since that court is a branch of the Supreme Court, whenever discretion is vested in ‘the supreme court ’ it may be exercised by the Appellate Division by way of a review of the action of Trial or Special Term, even though there has been no abuse of discretion by the lower branch of the court.” (9 Carmody-Wait on New York Practice, § 137, p. 573, cases footnoted; Hogan v. Franken, 221 App. Div. 164.)’”

. A study by the Special Committee on Divorce of the National Conference of Commissioners on Uniform State Laws, entitled, “Uniform Marriage and Divorce Legislation: A Preliminary Analysis,” lists the same factors as those mentioned above: