Fuchsberg, J.
In this action for divorce against a husband, Special Term granted his wife and children permanent alimony and child support totaling $18,000 plus the family residence. The Appellate Division (45 AD2d 1018) modified by increasing that sum to $31,000 on the grounds that Special Term’s award failed to reflect adequately the predivorce standard of living. The husband now appeals, raising' questions as to whether permanent alimony and support awarded against a husband may exceed his income, whether his capital resources may be considered in fixing such amounts and whether the wife should be compelled to seek employment to help support herself and the children.
The parties before us had been married 23 years when the husband abandoned his wife. At the time of their wedding, she was twenty years old. They have five children, four of whom are under 21 years of age. The husband is a salesman. He also owns real estate and securities estimated at the time of the trial to have a value of nearly a million dollars. Two thirds of it consists of IBM stock, which he received from his father at the time of his marriage. Because of the well-known emphasis of that company on growth, the dividends have been only about $10,000 per year. Most of his investments in real estate and real estate partnerships had originally been financed by the use of the stock as collateral. In effect, the position the husband painted is one of being "property poor”.
During the marriage, the husband led his wife to believe *635 that his salary as a salesman was his only source of income and replied to her requests for many basic household expenditures with the statement that he could not afford them. Photographs of the family home, produced at trial, indicated an extensive state of disrepair. Nevertheless, the husband testified that, during the last three years prior to the divorce, he expended some $28,000 per year for the support of himself and his family. There was also testimony indicating that his employer supplied him with fringe benefits, such as a car, which were of use to him and his family in a personal capacity, and which indirectly contributed to the family’s standard of living.
The husband testified that his net income after taxes was $28,000 per year, precisely the amount he personally had been expending on his family and himself. His gross income, however, appeared to be much higher, somewhere in the neighborhood of $67,000. He presented complicated testimony at trial in an effort to explain away much of this income as spent on business needs. Some of it appears to have been expended on payments related to the acquisition of real estate and other capital assets. At least one item of $13,000, listed as a business expense for tax purposes, was described by the husband as necessary "gratuities” connected with his job as a salesman. When questioned further on this item, he invoked his privileges against self incrimination.
The trial court granted the divorce to the wife on grounds of cruelty and abandonment and awarded her custody of the children. In addition, she received the family home and a $10,000 fund with which to repair it; the husband did not challenge this item on appeal. Holding itself bound by the husband’s reported net income of $28,000 per year, however, the court awarded alimony and child support payments totaling some $18,000 per year, thus allowing the husband to keep the balance of his reported net income for his own support.
It is, of course, the law that a wife has no absolute right to a share in her husband’s resources as such, and that the marital standard of living, assuming the husband is financially able to maintain it, provides the standard for permanent alimony payments. (Tirrell v Tirrell, 232 NY 224; Hearst v Hearst, 3 AD2d 706, affd 3 NY2d 967; Hunter v Hunter, 10 AD2d 291; Bittson v Bittson, 138 NYS2d 294, affd 285 App Div 1061; Rose v Rose, 3 Misc 2d 753.) In this case there was *636 ample evidence presented below to justify the awards made by the Appellate Division.
The husband’s own testimony indicates that maintenance of the marital standard of living consumed some $28,000 plus incidental benefits supplied by the employer. The evidence also justified a finding that the husband’s true income was much higher than his reported $28,000 per year, at least for purposes of awarding alimony and child support. And, while he was entitled to plead his self incrimination privileges when asked about deductions he labeled gratuities, the court was not obliged to allow the deduction. For, faced with a husband’s presentation of evidence which tends to obscure rather than clarify his true economic status, a court is entitled to make an award based upon the wife’s proof of her needs. (Orenstein v Orenstein, 26 AD2d 928, affd 21 NY2d 892; Zy v Zy, 13 NYS2d 415.)
Moreover, the modifications included substantial increases in the amount of child support the husband is required to provide. .Such support provision for a child is to be made "out of the property of either or both of its parents” and "as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child.” (Domestic Relations Law, § 240.) Obviously, the father’s resources rather than his net income are the limit upon such child support provision where he can afford more than he earns, and the interests of the child justify the award. (Swanton v Curley, 273 NY 325; Vought v Vought, 22 Misc 2d 356; Zellermeyer v Zellermeyer, 36 AD2d 636.)
Indeed, as to alimony and child support both, if it were necessary for the husband here to utilize his capital or other assets, they would not be exempt from the requirement that he maintain the marital standard of living simply because he voluntarily maintains his finances in a form that limits the income they produce. (See Rosenzweig v Rosenzweig, 145 NYS2d 810, affd 3 AD2d 732; Rose v Rose, supra; Turecamo v Turecamo, 15 Misc 2d 923.)
The case here is readily distinguishable from those in which the courts have held that, when a couple live beyond their means during marriage by consuming capital, the wife is not necessarily entitled to maintain such a standard of living after divorce. (Orenstein v Orenstein, supra; Vanderkloot v Vanderkloot, 36 AD2d 594; Berlin v Berlin, 36 AD2d 763.) The *637 husband’s means allow maintenance of the marital standard, which was itself based on income.
Interesting and closer in point are those cases wherein our courts have considered the income a husband is capable of earning by honest efforts, given his education and opportunities. (De Brauwere v De Brauwere, 203 NY 460; Nocilla v Nocilla, 212 NYS2d 654; Brandt v Brandt, 36 Misc 2d 901; Hoffman v Hoffman, 63 Misc 2d 245.) By analogy, the husband here may be required to make his considerable assets earn income which, by an objective standard, is commensurate with at least a conservative estimate of what they are capable of producing, and, when he fails to do so, he may be treated as though he had; his decision to let them grow for his own future benefit is not one which the courts are obliged to honor in all circumstances. The husband is not required to finance his alimony and support payments in precisely this fashion if he is able to meet them by other means, but we note that he may not place such a possible source of income "off limits” here, as he argued he may do.
There remains the husband’s assertion that his wife should be required to work in order to contribute to her support and that of the children. We are well aware of recent changes in the Domestic Relations Law which require the courts to consider, in awarding alimony, the extent to which the wife is able to support herself (Domestic Relations Law, § 236). Nor would we wish to cut back in any way on the case law which has developed a more equitable and less discriminatory approach to economic responsibility between men and women who divorce. (See Phillips v Phillips, 1 AD2d 393, affd 2 NY2d 742; Kover v Kover, 29 NY2d 408; Hessen v Hessen, 33 NY2d 406; 24 Syracuse L Rev 545; see, also, Morgan v Morgan, 59 Wn 2d 639; Freel v Freel, 253 Iowa 327; Freeman v Freeman, 79 Nev 33.)
However, in our zeal to correct what may have been inequitably burdensome alimony arrangements and to recognize the selfhood of women as functioning, independent persons, we would do injustice to the men and women we seek to treat more equally if we ignored the facts of life. A woman who, for historical and personal reasons, and especially with the long concurrence of her husband, chooses to make her contribution to a marriage by remaining at home to raise the children of the union and who finds herself, after 23 years, alone with still-growing children to rear, might be victimized rather than *638 liberated by being required to enter the working world. We recognized that explicitly in both the Phillips and the Kover cases.
True, the wife here is college educated and still relatively young/ but she has not participated in the job market for many years, indeed not at all during almost her entire adult life. There is a substantial likelihood that child care expenses, now that the wages for such services have become competitive with other employments, would consume the better part of any salary she might be able to earn. We do not mean to imply that her place is necessarily in the home with her children if she feels otherwise about the matter; if she prefers to work outside the home and if her salary should measurably exceed her work-related expenses, her husband always has the option to apply for a modification of the awards we affirm here today. (See Domestic Relations Law, § 236; Lebowitz v Lebowitz, 37 AD2d 841; Halsted v Halsted; 228 App Div 298.) We hold only that where he has acquiesced in and benefited from her role as wife and mother for 23 years, he may not now, for his own economic reasons, force her into a different role without demonstrating both that it has economic viability and that the children will not suffer any detriment from it. This is what is required under both the Domestic Relations Law and under Phillips and Kover; the husband made no such proof here. Certainly his control of the family capital may not be used as a means of circumventing that burden.*
It follows that the Appellate Division’s modifications were fully justified by the facts in this case, were correct in law, and were not an abuse of its discretion. Accordingly, the order should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed, with costs.

 Except to note them, we do not otherwise comment here on contemporary proposals for sharing of assets amassed during a marriage where one partner expends effort in earning money while the other expends equal effort in raising the children and maintaining the home. (See 2 Foster-Freed, Law and the Family, pp 44-48, and authorities cited therein.)