Fuchsberg, J.
This appeal presents questions relating to the fixing of alimony where a divorcing wife and husband each have separate means of producing current income and the husband has chosen not to exercise those available to him.
Special Term awarded the appellant wife alimony of $50 per week and exclusive possession of a house and the farmland on which it is located. The Appellate Division struck the alimony award and gave the respondent husband the right to enter the land in order to farm it, although continuing in the wife possession of the house itself. The wife now seeks reinstatement of the awards made at Special Term. For the reasons which follow, the order of the Appellate Division should be modified to reinstate the alimony award.
The parties were married in 1946. They have two children, one of whom is over 21 and the other of whom is 19 years of age. The wife has been a schoolteacher for some years; the husband, employed as an engineer, had, by 1968, reached an annual earnings level of some $45,000 plus bonuses and benefits. Those earnings constituted the bulk of their income.
In 1968 the husband persuaded his wife to let him try his *4 hand at full-time farming as an occupation. This occupational change was an experiment and, according to the proof, the wife agreed to it in the expectation that it would provide them with a living. When she made this commitment, she was aware of the fact that a substantial amount of deferred income, scheduled to be received from his former employer, would help to support them during the initial phase of the change. After putting the plan into effect, the parties continued to live in the marital residence. The professional farming took place at another location, known as Argyle Farm. Contrary to expectations, the farming venture proved to be a losing proposition.
In 1969, when a tractor accident temporarily sidelined the husband, he hired someone else to run the farm, devoting himself instead to freelance management consulting, for which he possessed an expertise developed during his engineering career. He quickly proved his continued high earning capacity in that calling. Because he failed to file income tax returns for the last few years of the marriage, the trial court was unable to ascertain the husband’s exact consulting income, but his own testimony established it at not less than $35,000 net annually until 1972, the year in which separation proceedings, which preceded the ultimate divorce, were begun. In that year, midst negotiations for a separation agreement, he decided to abandon an outgoing consulting assignment which would have paid him approximately $20,000 for some 10 weeks’ work. Insisting that he has become a full-time farmer, he has steadfastly refused all offers of consulting employment ever since.
During the same period, the husband also entered into a contract with his sister. By its terms, he turned over to her title to all of his New York real estate, including the marital residence and Argyle Farm, along with various stocks and bonds which he then owned. There was no cash consideration for the transfer. Instead, the sister forgave him a small loan and guaranteed him the use of a car and its related expenses, all the food he needed from the farm, a remodeled house on it to live in rent free, $15,000 in benefits to each of his children upon his death, a college education for his minor son, and a percentage of any possible profits from the farm and the securities. He agreed to manage the farm and the stock portfolio without salary. Under that arrangement, while necessarily conceding that he has turned himself into the guaran *5 teed recipient of present creature comforts for himself and future benefits for his children, he asserts he is a subsistence farmer with no income from which to pay alimony to his wife.
Special Term found that he was to be regarded as a management consultant up to the time of the divorce and that his continued self-classified status as a subsistence farmer was at least in major part a ploy to put his assets beyond his wife’s reach. The Appellate Division, on the other hand, put great store in the husband’s original plan to become a farmer, even though unilaterally renewed at the time of the divorce by him. In effect, it charged the wife with having assumed the risk that the farm venture would not pay.
It appears to us, however, that the record amply supports Special Term’s finding that the husband here deliberately stripped himself of income for reasons which went beyond the needs of a reasonable occupational choice. It is clear that he is capable of earning a substantial income. And his arrangement with his sister reeks of an impermissible attempt to avoid his obligation to his wife.
Nor can the husband excuse his attempted avoidance of his obligations by an exaggerated reliance on his wife’s acquiescence in his plan to take up farming. As already indicated, the husband never actually put his plan into full practice while the marriage was viable, but only after the parties had already separated. By then the pressures of self-interest were too great for the evidence of a sham to be overlooked. Moreover, her acquiescence itself is not to be deemed to extend to all possible ramifications of her husband’s decision, since it is manifest that, at all time prior to the divorce, the farm’s unprofitability was viewed by both parties as a temporary circumstance ameliorated by the husband’s consulting income. Her consent, such as it was, was hardly one to be enforced as though given to an impersonal, arm’s length agreement made in the market place.
It is the actual marital standard of living, realistically appraised, which provides the basis for an award of alimony where the husband can afford to maintain that standard, unless he can present genuine reasons, vocational or otherwise, upon which the court could justify a lesser award (see Kay v Kay, 37 NY2d 632, 637, and cases cited therein; Kover v Kover, 29 NY2d 408). So measured, the husband’s proof here fell far short of showing that his lack of income was either unavoidable or the result of a plan to which the wife was *6 irrevocably committed. Under such circumstances, a husband is under an obligation to use his assets and earning powers if these are required in order to meet his obligation to maintain the marital standard of living (Domestic Relations Law, § 236; Kay v Kay, supra; De Brauwere v De Brauwere, 203 NY 460; Nocilla v Nocilla, 212 NYS2d 654; Brandt v Brandt, 36 Misc 2d 901; Hoffman v Hoffman, 63 Misc 2d 245).
Given this husband’s ability to provide support, the question that still remains is whether his wife’s needs are such that she is in fact entitled to alimony. For section 236 of the Domestic Relations Law states that alimony shall be awarded "as, in the court’s discretion, justice requires, having regard to the length of time of the marriage, the ability of the wife to be self supporting, the circumstances of the case and of the respective parties” (emphasis added).
The respondent husband suggests that the emphasized language should be interpreted to mean that whenever a wife’s income provides for her basic needs the marital standard of living, the length of the marriage, and other factors should be largely irrelevant. Such an interpretation goes too far. In Kover (29 NY2d 408, supra), and in the two companion cases decided with it, in interpreting section 236 as it applies to a wife’s ability to earn an income, we left the parties with incomes as nearly equal as circumstances permitted. Moreover, all three of the Kover cases involved self-supporting wives whose marriages were childless and of relatively short duration. None of them had made the kind of long-term substantial investment in marriage involved in the present case.
Here the marriage was of over 25 years’ duration. During that quarter of a century the parties aided each other in the completion of their own higher educations, launched careers, reared a family and otherwise were partners in the full panoply of concerns and strivings that are bound to exist over such a long period. Where there has been a joinder of such duration and involvement, there can be no automatic nonentitlement to alimony in the wife simply because she has some separate earnings or income. Each case must be determined on its own facts and figures, including, of course, the pertinent and relative financial circumstances of the parties. And where incomes and resources are neither fixed nor stereotyped, as is the husband’s case here, a sophisticated elasticity must be brought to bear in reaching a determination.
*7 The wife here nets approximately $8,000 per year as a schoolteacher. She now has the use of the Argyle house. Compared with the undisputedly ample marital standard of living and with the husband’s demonstrated earning potential, on the facts here it was an abuse of discretion to deny her the very modest alimony allowance of $50 per week awarded by Special Term, and, therefore, to the extent that the order of the Appellate Division does so, we believe it should be modified. (Orenstein v Orenstein, 21 NY2d 892; Trippe v Trippe, 19 NY2d 944; Sacknoff v Sacknoff, 7 NY2d 771.)
On the other hand, we find the modification by the Appellate Division, which, while leaving the wife in exclusive possession of the Argyle residence, permitted the husband access to the farm itself, to have been entirely appropriate. The husband’s contract with his sister and the confused transactions arising out of a recission of the couple’s initial separation agreement (see Hickland v Hickland, 46 AD2d 1) prevented the courts below from awarding possession of the marital residence to the wife. In its place, therefore, Special Term awarded her the use of Argyle Farm and its residence. However, it was not necessary to deprive the husband of the use, for his farming enterprise, of the large acreage beyond that fairly surrounding the residence and its necessary appurtenances in order to provide a home for the wife. (See Bernstein v Bernstein, 36 AD2d 620; Jemzura v Jemzura, 29 AD2d 797, affd 26 NY2d 1021.)
Accordingly, so much of the order of the Appellate Division as denied alimony to the wife should be modified and the award by Special Term of $50 per week reinstated; the order is otherwise affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order modified, with costs to defendant, in accordance with opinion herein and, as so modified, affirmed.