OPINION OF THE COURT
Nanette Dembitz, J.
A major issue in this proceeding for support by a wife against her husband, is whether the report of his income on their joint tax return should be accepted as valid or whether petitioner wife can and has shown that the return understated his income.
The couple, married in 1950, separated in 1977. Their joint tax returns for 1975 and 1976 and the husband’s individual tax return for 1977 state his yearly income as $31,000 to $35,000. Petitioner, however, contends that the family’s expenditures in 1976, the last year that they lived together, show that he must have had an income in that year of approximately $73,000. Neither party argues that there has been any substantial change in his financial situation since 1976 nor is there any evidence to that effect. Petitioner therefore contends that a support order should be entered for *582 her on the basis of respondent’s present estimated income of $73,000 rather than his reported 1977 income of $34,800.
wife’s attack on joint returns
Respondent argues that petitioner cannot challenge the income tax returns in which she joined, invoking the rule that her joinder "in the returns is a circumstance calculated to uphold their accuracy.” (Bernstein v Bernstein, 36 AD2d 620.) However, a significant point in rejection of a wife’s attack has been her failure to offer an "explanation of her joining in an income tax return which reported appellant’s [husband’s] income far below that which she now swears he has.” (Hodas v Hodas, 286 App Div 1027; see, also, Campbell v Campbell, 7 AD2d 1011.)
Here, the evidence shows that petitioner was uninformed as to respondent’s income nor did she participate with respondent and his accountant in the compilation of the joint tax returns. Under these circumstances it is understandable that she accepted the return as they prepared it, and her subscription to it does not foreclose her challenging it. As in Kay v Kay (37 NY2d 632, 636), petitioner can attempt to show that "the husband’s true income was much higher than his reported” income. (Cf. Blauner v Blauner, 60 AD2d 215, 217.)
EXPENDITURE METHOD OF PROVING 1976 INCOME
Respondent’s income was in 1976 almost wholly derived from a family-owned incorporated retail drugstore in Manhattan, in which he worked as the sole salaried corporate officer and in which he employed nine clerks.[1] His customers paid him in cash and he paid his employees as well as his own salary in cash. Further, he paid in cash or money orders issued in his drugstore, or bank checks purchased with cash, for many of his and his family’s substantial living expenses, including clothing, airline fares for vacations, and tuition for his son’s private school. At the time of the trial respondent had no record of the money orders he had issued for himself or of the bank checks. Further, respondent habitually kept varying, unspecified amounts of cash in a bank safe-deposit *583 box, the amount at the time of petitioner’s and respondent’s separation in April,. 1977 being $4,000.
Respondent’s habitual reliance on cash or cash equivalents in substantial amounts "tends to obscure rather than clarify his true economic status” (Kay v Kay, supra, p 636), and suggests a "handling of one’s affairs to avoid making the records usual in transactions of this kind” (see Spies v United States, 317 US 492, 499).[2] Under these circumstances it was as justifiable for petitioner to resort to the "cash expenditure” method of proving respondent’s income as it is in tax cases where such a procedure is frequent when a taxpayer’s records are inadequate.[3]
However, while the present proceeding is not a criminal one, nevertheless the rule seems applicable that "great care and restraint” should be exercised in estimating income by the cash expenditure and similar methods (see Holland v United States, 348 US 121, 125, 129). Further, since petitioner in effect charges respondent with falsity, she must, in this court’s opinion, bear the burden of proving by clear and convincing evidence that respondent’s income was in 1976 greater than he reported. (Cf. Richards v Kaskel, 40 AD2d 804, 805, cases there cited; and Cave v Green, 281 App Div 560, 562, as to the quantum of evidence required to establish a civil fraud.) The presumption provided in section 437 of the Family Court Act that "[a] respondent is prima facie presumed * * * to have sufficient means to support his wife”, cited by petitioner, and the usual rule in civil cases of proof by a preponderance, therefore cannot control the burden of proof or required quantum of evidence in this case.
petitioner’s proof of respondent’s 1976 income
The court concludes (on bases further detailed in the findings filed herewith) that the petitioner has sustained her burden of proving that respondent’s income was in 1976 substantially more than the amount he claimed.
While petitioner could not produce documentary proof as to many family expenses, such as would have been available if *584 respondent’s practice had been to pay by check or charge account (see United States v Caserta, 199 F2d 905, 907), petitioner’s reconstructions of the amounts spent for clothing and other items were credible, nor for the most part did respondent’s attorney elicit contradictory testimony. Further, her estimates were consistent with the middle-class living standard that the family enjoyed; that standard was evidenced by conceded expenditures such as $100 a month board for a horse for the daughter, a private school for the son, and $20,000 for remodeling the family’s co-operative apartment in the Berresford Apartments. Even in tax evasion prosecutions, a "realistic allowance for normal living expenses” is taken into account in estimating income (see United States v Cleveland, 477 F2d 310, 313). Respondent’s generalized contention that petitioner exaggerated the family’s 1976 expenditures is insufficient to refute her evidence.
Only with respect to security purchases did respondent claim that 1976 expenditures were financed from pre-1976 assets — a claim which petitioner failed wholly to overcome. Totaling the contribution from 1976 income to the security purchases, plus the other 1976 expenditures, and the 1976 net savings (all detailed in the filed findings), the family’s income for 1976 is estimated at approximately $55,000. The evidence indicates no source for any substantial part of this income other than respondent’s business profits, nor does he claim any or any substantial change in his business situation since 1976. And "[cjonditions once shown to exist are presumed to continue” (Larsen Baking Co. v City of New York, 30 AD2d 400, 406, affd 24 NY2d 1036). However, the family income in 1976 included small amounts from income tax refunds and like sources other than business profits (detailed in the findings). Deducting such amounts, which are not presumptively recurrent in 1979, from the estimated 1976 family income, the reasonably predictable income from respondent for 1979 is approximately $49,000.
petitionee’s needs in accordance with preseparation STANDARD
Petitioner’s calculation of her present needs as $626 a week includes several items which respondent challenges. As to her college tuition and books, her desire for a new interest is understandable and creditable. However, there is no evidence that this type of expense was part of the preseparation *585 standard of living. Nor has petitioner contended that her course of study will equip her for employment. Thus, there is no justification for imposing this expense on respondent. (See Morgan v Morgan, 52 AD2d 804.)
However, respondent’s argument that petitioner should fill her drug needs from his pharmacy must be rejected. For a court to impose a financial arrangement that would force contact between petitioner and respondent would certainly be unwise. (Cf. Borodinksky v Borodinksky, — NJ Super —, Oct. 3, 1978, 4 Family Law Rep 2834, as to undesirability of any such coercion to associate.)
Respondent’s contention that petitioner should secure work and contribute to her own support, is likewise untenable. Certainly a petitioner has an obligation to secure gainful employment if she can. (Kay v Kay, 37 NY2d 632, 637, supra; Okpaku v Okpaku, 45 AD2d 951; Paget v Paget, 36 AD2d 813.) But petitioner lacks the opportunities of a wife who has recently held regular employment (see Lewis v Lewis, 37 AD2d 725) and has a "demonstrated earning capacity” (Greene'v Greene, 40 AD2d 788) or "present earning ability” (Morgan v Morgan, 52 AD2d 804, supra). Petitioner’s work history during her 27 years of married life consists mainly of short periods of employment as a salesperson in respondent’s drugstore. Whether or not she could secure a similar job from a stranger or any other job, is, as petitioner argues, questionable; respondent acquiesced (see Kay v Kay, supra) in her abstention during her married life from employment outside his business (except for a few short stints) or work training. Certainly petitioner "should be encouraged to * * * [be] useful” (Brody v Brody, 22 AD2d 646, affd 19 NY2d 790), but she cannot at this time be deprived of support because of the uncertain possibility of her securing employment.
Finally, respondent argues that the court should take into account petitioner’s potential return of interest if and when petitioner and respondent’s joint assets are divided between them. While it again would be unfair to petitioner to minimize her need for support on a conjectural basis, respondent is correct in the sense that the instant support order may require modification following petitioner’s receipt of a share of the assets. (Cf. Vivian v Vivian, — Mont —, Sept. 13, 1978, 4 Family Law Rep 2756: the "reasonableness of such an award can only be properly determined after there has been an equitable division of the marital estate.”)
*586 On the basis of petitioner’s needs in accordance with the family’s preseparation standard, her lack of means (further detailed in the findings filed herewith), and respondent’s circumstances, a support order of $335 a week is entered. Taken into account is respondent’s claim that he requires $508 a week for his needs and those of his 18-year-old son who resides with him. (Petitioner concedes that respondent’s needs are at least that much, indeed arguing that he has omitted items of current expense in order to minimize his income.)
AWARD OF COUNSEL FEE
Petitioner’s attorney applies for the award of a counsel fee of approximately $20,000 and disbursements, in addition to the $2,500 already paid her by petitioner. She submits a computerized table of the time spent by herself and associates at their respective hourly rates.
Respondent’s contention that petitioner’s attorney spent excessive time in preparation for trial must be rejected. Certainly a discovery effort (which was time-consuming in part because of respondent’s efforts to avoid it) and a review of the large number of financial documents produced by respondent, were essential. Ascertaining a respondent husband’s undisclosed assets undoubtedly injects complexity into support proceedings that must be given weight in the fee award. (See Greiner v Greiner, — Ind App —, Jan. 18, 1979, 5 Family Law Rep 2297.)
Respondent’s attorney attacks the appearance of an assistant with petitioner’s main attorney at the trial, whereas he appeared alone. However, use of a trial assistant can hardly be outlawed, particularly in view of the quantity of figures, computations, and documents essential to the presentation of petitioner’s case. As to respondent’s attorney’s assertion that his own fee was only $1,500, the legal assistance advisable for a petitioner cannot be dictated by the respondent’s need or choice as to his own representation. (Cf. Samuel v University of Pittsburgh, US Dist Ct, WD Pa, Nov. 2, 1978, 47 USLW 2334.) While respondent’s means are of course important in fixing a fee award, his own counsel’s fee may reflect numerous other factors.
Respondent’s complaint as to plural counsel only seems justified insofar as an associate was occasionally used whose services were billed at a higher hourly rate than the regularly *587 assigned assistant. And respondent’s attack on petitioner’s attorney’s hourly record must be credited in the minor respect that in the rounding out of time into the quarter-hour units used in petitioner’s computation, small added increments over the actual input are likely.
petitioner’s inability to pay counsel fee
Respondent urges that petitioner has sufficient funds to pay her counsel fee herself, because she "is holding at least one-half of the marital assets.”
The principle is well recognized that a wife undertaking a separate life should be permitted to retain modest savings or capital for her future security. (See Hyman v Hyman, 56 AD2d 337, 338; Walker v Walker, 18 AD2d 684; Brody v Brody, supra.) Blauner v Blauner (60 AD2d 215, supra) seems to this court to sustain this principle. There, the lower court had awarded a fee of $20,225; the appellate court reduced the award to $15,225 stating that "plaintiff has more than adequate funds to absorb the balance” (apparently of $5,000). (Blauner v Blauner, supra, p 218.) However, in Blauner, the petitioner had, according to the appellate court, separate assets of approximately $475,000.
Here the largest figure mentioned as petitioner’s share of the joint assets is under $50,000. In that such assets represent petitioner’s and respondent’s savings over 27 years and in that petitioner’s portion of them would supply her with an unknown but apparently modest sum for her security, it would be inconsistent with controlling principles for the court to compel her to invade it to pay her counsel’s fee.
Giving particular attention to the "time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented * * * and benefit resulting to the client”,[4] as well as respondent’s means, and taking into account in connection with such means the instant support order, a fee of $12,000 plus disbursements of $338.55 is awarded.

. Petitioner’s testimony as to the number of employees is undenied; and the 1976 corporate income tax return showed wage payments that would cover at least six full-time employees according to the wage-rates to which respondent testified.

. And see Matter of Minor v Commissioner (15 TCM 906, 907, 912, 913), as to unrecorded deposit of cash in safe-deposit box. Respondent’s explanation of the reason for his making such deposits was unconvincing.

. See, e.g., United States v Johnson, 319 US 503, 517; United States v Mackiewicz, 401 F2d 219, 220; Taglianetti v United States, 398 F2d 558, 562, 567).

. Matter of Freeman, 34 NY2d 1, 9; see, also, Schloss v Schloss, 63 AD2d 898, 899; Silver v Silver, 63 AD2d 1017; Matter of Barnes v Barnes, 54 AD2d 963).