■ NORMA-BETH BESEN, Respondent, v MALCOLM M. BESEN, Appellant. — Order of the Supreme Court, New York County (Gabel, J.), entered December 14, 1982, which, *inter alia*, directed the defendant husband to pay plaintiff wife, *pendente lite*, the amount of $500 per week for maintenance, $500 per week for the support of two minor children; to continue to pay for the maintenance and utilities on the marital co-operative apartment, the private schooling of the children and all medical expenses; and which enjoined the defendant from assigning, transferring, selling, encumbering or hypothecating any of his assets or removing any of his assets from the jurisdiction of the court, except in the ordinary course of defendant's business and in connection with his personal affairs, is affirmed, without costs. The dissent asserts, not inaccurately, that the "wife clearly has some substantial assets". However, this may be misleading. The record reveals that essentially the assets of the wife are not in such form as to make funds available for her support. They consist principally of one half the value of a co-operative apartment and its furnishings. Moreover, the shares of stock which she owns in a corporation in which her father is a major shareholder do not yield income and are essentially unmarketable, being "lettered" or restricted shares. It seems significant further, that even the dissent concedes that there is an "area of uncertainty" as to the precise assets and earnings of the husband. Exhibits submitted to Special Term show that the husband's net equity in a securities trading account to have been $1,010,000 as of April, 1982. Although the dissent recites that there is an outstanding bank debt of $510,000 applicable to this securities account, the letter from Chemical Bank dated February 2, 1982, states that $510,000 represents an outstanding loan "used for general *real estate investments*" (emphasis added). Since the same letter notes that a $370,000 loan is outstanding for the acquisition of the land and house in Westhampton, New York, the question remains as to exactly which "real estate investments" were made by the husband, either alone or in partnership with his brother, with the proceeds of the $510,000 loan. Defendant in an affidavit submitted at Special Term denied having *any* interest in real property with the exception of the co-operative, his one-eighth interest in the building which was inherited from his father, the Westhampton beach house, and a one-eighth interest in undeveloped property now subject to a real estate tax arrears foreclosure sale. In addition, although the dissent attempts to calculate the husband's present income, based largely upon his income tax returns and his accountant's

"projection," we note that said returns would not reflect income from municipal bonds which are tax exempt or other tax shelters. Evidence submitted by the wife indicates that the husband, at some point of time which is in dispute, indeed, had a sizeable portfolio of such municipal bonds. We do not express any opinion as to the level of support which should be fixed by the court after trial. It seems quite apparent from the discussion in the dissent, and of necessity our response, that the precise financial status of each of the parties is subject to conjecture and surmise. The award of temporary maintenance and support is discretionary with Special Term (Domestic Relations Law, §§ 236, 240) and should not be casually upset. From our review of the record, we are of the opinion that there was no abuse of discretion by Special Term in these awards and in the other provisions it made *pendente lite*. "A temporary award is bottomed upon conflicting affidavits, ofttimes based upon differing versions of the finances of the parties and the standard of living enjoyed by them during the life of the marriage. As we have noted on numerous occasions, the remedy for this sometimes unsatisfactory award is a speedy trial where the facts may be examined into in far greater detail and where a more accurate appraisal of the situation of the parties may be obtained" (*Woram v Gilliam,*78 AD2d 796). Because of the amorphous nature and complexity of the financial status of each of the parties, we realize that there may not be a prompt resolution of this matter. Therefore, our determination herein is without prejudice to reapplication by either party to Special Term for modification of its order after a more accurate appraisal of the financial situation of the parties has been obtained.

Concur — Kupferman, J. P., Sullivan, Asch and Milonas, JJ.

Silverman, J., dissents in a memorandum as follows: I would modify the order appealed from so as to reduce the temporary support award to $250 per week for the support of plaintiff wife and $250 per week for the support of the children, in addition to requiring the defendant to continue to pay the maintenance and utilities on the marital co-operative apartment; I would strike all other provisions relating to expenses of the children and medical expenses; I would strike the preliminary injunction except to require defendant to give plaintiff 20 days' notice of the proposed disposition of any of his real property. The parties were married in 1970; the divorce action was instituted 12 years later. They have two children now aged 10 and 4½ years. The order appealed from requires defendant husband to pay to the wife, *pendente lite,* $500 weekly for her support and $500 weekly for the support of the children; to maintain the co-operative apartment and utilities therefor; to continue to provide for the private schooling for the children; to provide all medical expenses for the wife and children; to pay to the wife $1,000 to retain the services of an accountant; and the order preliminarily enjoins the husband from transferring or encumbering any of his assets or removing any of them from the jurisdiction of the court, except in the ordinary course of defendant's business and in connection with his personal affairs. The husband calculates, not unreasonably, that the total of these figures comes to $86,690 per annum. As the husband's calculations include $19,820 for maintenance, carrying charges and utilities on the co-operative apartment, in which the husband also resides, it may be fair to reduce the $86,690 figure to say $76,000 as the annual rate at which the order appealed from directs the husband to pay for the support of his wife and children. The wife clearly has some substantial assets; but the discussion has been mostly with respect to the husband's assets. The wife's estimate of the husband's assets and earnings is grossly exaggerated, attributing to him assets and earnings belonging to his brother and mother, and ignoring debts and interest obligations to which his assets and income are clearly subject. The husband gives a much clearer and better-documented picture of his assets and

earnings — though there is an area of uncertainty due particularly to the use of gross figures from a partnership with his brother, as well as capital loss carryovers, and a securities trading account which doubtless includes unrealized capital gains or losses, and which can be liquidated in part to obtain money, if needed. There emerge from the husband's records as fairly reliable figures, dividend income for 1981, 1980 and 1979 of $80,259, $40,476, and $66,592, respectively; and in 1979 there was also a short-term capital gain of $14,534, which can be deemed to raise the 1979 figure of dividends and short-term capital gains to $81,000. But the husband had annual and substantial recurrent interest expenses of $112,835, apparently in 1981. Much of this interest expense (about $87,000, if we exclude interest on loans on the Westhampton property) represents loans to carry the stocks from which the dividends are derived. In his affidavit of October 14, 1982, the husband said that these interest expenses now reduce his total dividend income to a net amount of $17,500. This apparently indicates that the interest expenses have gone down — which is to be expected in view of the decline in interest rates. But it remains true that the dividends cannot be considered apart from the interest expenses, and that the interest expenses wipe out a large part of the husband's dividends. The husband also has an annual income from a long-term net lease on the 39th Street real property of $7,500. While certain beach house property in Westhampton was rented for $30,000, it is clear that this is less than the interest expenses on the loans outstanding against that property. As to the suggestion in the majority memorandum that the income tax returns would not reflect income from municipal bonds which are tax exempt or other tax shelters, the husband explicitly states, "I have no non-taxable income and own no municipal bonds." There is no evidence the other way. The husband's accountant projects the husband's annual net income to be $25,000, being the sum of the above-mentioned $17,500 and $7,500 figures. The husband's brief maintains that his annual income is less than $40,000. Considering now the capital value of the husband's assets, he has a one-half interest in a securities trading account whose net equity, after deduction for margin debt, has varied in 1982 between $860,000 and $1,010,000. There is an outstanding bank debt of $510,000 applicable to this securities account, reducing the equity in the account to approximately $500,000, and the husband's share of that equity to about $250,000. In addition, the husband has certain valuable but illiquid assets: (a) the co-operative apartment, owned one half by him and one half by his wife; (b) a one-eighth interest in the 39th Street real property, which interest is valued by the husband at $75,000; and (c) a one-half interest in the Westhampton real property; that property is subject to a loan of at least $370,000, and the husband's interest is one half the net. These assets are illiquid. The co-operative apartment because it is occupied by the family; the 39th Street property because it is burdened by a low rental long-term lease; as to the Westhampton property, a sale at $575,000 gross fell through. In any event, the temporary injunction apparently restrains the husband from disposing of any of these properties. The husband says his income is $25,000 to $40,000. We may assume that these figures are too conservative. But even allowing for that and for the possibility that the family living expenses were met in part out of capital and in part through generosity of the husband's brother and mother, the amount allowed by Special Term for the support of the wife and children is excessive, especially as the wife has some substantial assets. While it is true that there was a budget prepared by the husband at one time totaling about $82,000, the husband says that budget was prepared to show that the family was living beyond their means, and in any event, that budget includes $15,000 carrying charges for the Westhampton property, and

includes the husband's living expenses. I would reduce the cash payable by the husband to the wife for the wife and children's support to $250 per week for the wife, and $250 per week for the children, for an annual rate of $26,000. In addition, I would leave the obligation on the husband to pay the maintenance, carrying charges and utilities on the co-operative apartment (incidentally, of which the wife is a one-half owner). Such co-operative apartment expenses total about $19,820 per annum. Allocating approximately one half of that to the fact that the husband lives there too, this would mean approximately $10,000 of the co-operative apartment charges could be deemed for the support of the wife and children. This $10,000 plus the $26,000 would make $36,000 per annum that the husband is required to pay for the support of his wife and children. In the light of the husband's income and the situation of the parties, I do not think we are justified in requiring him to pay more. The order appealed from also temporarily enjoins the husband from selling, encumbering, or removing any of his assets from the jurisdiction of the court, except in the ordinary course of the defendant's business and in connection with his personal affairs. Plaintiff wife's brief says that the injunctive order was merely a " 'notice' provision rather than a strict preventative provision." There is nothing in the order that so limits it. It does not appear that an injunctive provision is needed. Plaintiff's brief concedes the injunction is not to prevent the husband from trading in the trading account. The husband's remaining properties are essentially illiquid. The wife would be sufficiently protected by an order requiring the husband to give 20 days' notice to the wife of any proposed disposition of any real property.